# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

MICHAEL JONES,                    )
                                  )
           Petitioner,            )
                                  )
      v.                          )      Civil Action No. 09-457-GMS
                                  )
PERRY PHELPS, Warden, and         )
ATTORNEY GENERAL OF               )
THE STATE OF DELAWARE,            )
                                  )
           Respondents.           )

---

Michael Phelps. *Pro se* petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for Respondents.

---

## MEMORANDUM OPINION

_Sept 27_ , 2012
Wilmington, Delaware

Sleet, Chief Judge

Pending before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254 filed by petitioner Michael Jones ("Jones"). (D.I. 1)  For the reasons discussed, the court

will deny the petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

As set forth by the Delaware Supreme Court in *Jones v. State*, 940 A.2d 1, 6 (Del. 2007):

Jones, a/k/a Gotti, and Darrel Page, a/k/a Quazzi, were members of a drug ring in
Wilmington, Delaware.  Cedric Reinford, a/k/a Dreds, was the leader of the operation.
Sometime in the evening of November 20, 1999, Jones, Page, and Reinford were together
in Reinford's car in Wilmington.  Jones, born on March 15, 1982, was seventeen years
and eight months old at the time.

While the three were in Reinford's car, Jones killed Reinford by shooting him three times
in the head.  Page and Jones then dowsed Reinford and his car with gasoline and set it on
fire.  Afterwards, they went to Reinford's house to steal drug money from a safe in
Reinford's home.  There, Jones shot and killed Reinford's fiancee, Maneeka Plant, and
shot Reinford's brother, Muhammed, in the face.  Muhammad miraculously survived and
called 911 at 3:20 a.m. on November 21.  Later that day, at the hospital, Muhammad was
able to identify both Page and Jones from a photo lineup and told the police what had
happened.  The subsequent police investigation led the police to question Kim Still,
Page's girlfriend.  Still told police of Page's plan to kill Reinford and to recruit Jones to
help him.  She also explained the circumstances surrounding why she drove to
Philadelphia to pick up a car borrowed by Page and Jones, what happened when she met
up with the two men, and what Page said to Still upon her being told by the police over
the phone to return to Wilmington for questioning.

In January 2001, Jones was indicted and subsequently arrested on charges of first degree

murder (three counts), first degree robbery, second degree arson, and related weapons and

conspiracy offenses. *Id.* In January 2005, a Superior Court jury found Jones guilty on all

charges. *Id.* at 6,7.  A three-day penalty hearing was conducted, after which the jury

recommended that Jones be sentenced to death. *Id.* at 7.  However, before sentencing, the United

States Supreme court decided *Roper v. Simmons*, 543 U.S. 551 (2005), making Jones ineligible

1

for the death penalty because of his age. After *Roper* was decided, but before sentencing, defense counsel filed a moton for the judge's recusal and for a new trial. Both motions were denied. On September 16, 2005, a Superior Court judge sentenced Jones to life imprisonment for each of the murder convictions and a term of years for the remaining convictions. Jones appealed, and the Delaware Supreme Court remanded the case for an evidentiary hearing regarding Jones' *Batson* claim. When returned from remand, the Delaware Supreme Court affirmed Jones' convictions and sentences. *See generally*, *Jones*, 940 A.2d 1.

In May 2008, Jones filed a motion for post-conviction relief under Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). The Superior Court denied the Rule 61 motion, and the Delaware Supreme Court affirmed that decision. *See State v. Jones*, 2008 WL 4173816 (Del. Super. Ct. 2008); *Jones v. State*, 968 A.2d 492 (Table), 2009 WL 595574 (Del. Mar. 9, 2009).

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

2

## B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i)  there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997); *Coverdale v. Snyder*, 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000). "Fair presentation of a claim means that the petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004). A federal legal claim is "fairly presented" to state courts when there is: (1) reliance in the state

3

courts on pertinent federal cases employing constitutional analysis; (2) reliance on state cases employing constitutional analysis in like fact situations; (3) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; and (4) allegation of a pattern of facts that is well within the mainstream of constitutional litigation. *See McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless,* 172 F.3d at 260; *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of

constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell,* 547 U.S. 518, 537-38 (2005)(citing *Schlup v. Delo,* 513 U.S. 298, (1995)); *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

### C. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits,[1] the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor,* 529 U.S. 362, 412 (2000);

---

[1]A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn,* 570 F.3d 105, 115 (3d Cir. 2009).

5

*Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied"; as recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 784-85 (2011).

If the state's highest court has not adjudicated a federal habeas claim on the merits, but the claim is exhausted and the merits are properly before the federal court on habeas review, then the federal court must review the claim *de novo*. *See Breakiron v. Horn*, 642 F.3d 126, 131 (3d Cir. 2011) (citing *Porter v. McCollum*, __ U.S. __, 130 S.Ct. 447 (Jan. 19, 2011)). *De novo* review means that the court "must exercise its independent judgment when deciding both questions of constitutional law and mixed constitutional questions." *Williams*, 529 U.S. at 400 (2000)(O'Connor, J., concurring).

Finally, whether reviewing a habeas claim *de novo* or under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III. PENDING MOTIONS

Jones recently filed a motion to amend his petition and expand the record with respect to

claims two and six. (D.I. 38)  However, because the motion really attempts to amplify claims two and six, rather than amend them, the court will construe the motion as one requesting supplementation.  Construed in this manner, the court will grant the motion to supplement.

Jones also filed a motion for an evidentiary hearing. (D.I. 37)  For the reasons set forth below, the court concludes that Jones' petition does not warrant relief.  Therefore, the court will deny the motion for an evidentiary hearing as moot.

## IV. DISCUSSION

Jones' timely filed petition asserts the following nine grounds for relief: (1) illegal arrest; (2) speedy trial violation; (3) *Brady* violation; (4) abuse of discretion by the trial judge in deciding various evidentiary matters; (5) prosecutorial misconduct; (6) ineffective assistance of trial counsel; (7) *Batson* violation and related prosecutorial misconduct; (8) abuse of discretion by the trial judge in allowing the admission of the prior statements of a witness and photographs of the victim, and failing to sequester certain witnesses; and (9) judicial misconduct and abuse of discretion by the trial judge for failing to grant Jones' motion to recuse and for a new trial.

### A. Claim One: Illegal Arrest

In his first claim, Jones asserts that his arrest and detention were illegal because a police officer lied in his affidavit of probable cause for the arrest.  Consequently, Jones contends that the police arrested and detained him in violation of his Fourth Amendment rights.

The State properly argues that Jones' Fourth Amendment claim is not cognizable on federal habeas review under the doctrine established in *Stone v. Powell*,  428 U.S. 465, 494 (1976).  In *Stone*, the Supreme Court held that federal courts cannot provide habeas review of Fourth Amendment claims if the petitioner had a full and fair opportunity to litigate Fourth

Amendment claims in the state courts. *Id.*; *See Wright v. West*, 505 U.S. 277, 293 (1992)("We have also held . . . that claims under *Mapp* [alleging evidence obtained in violation of the Fourth Amendment] are not cognizable on habeas as long as the courts have provided a full and fair opportunity to litigate them at trial or on direct review."). A petitioner has had a full and fair opportunity to litigate such claims if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether the petitioner actually availed himself of that mechanism. *See U.S. ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1978); *Boyd v. Mintz*, 631 F.2d 247, 250 (3d Cir. 1980); *Petillo v. New Jersey*, 562 F.2d 903, 906-07 (3d Cir. 1977). Conversely, a petitioner has not had a full and fair opportunity to litigate a Fourth Amendment claim, and therefore, avoids the *Stone* bar, if the state system contains a structural defect that prevented the state from fully and fairly hearing his Fourth Amendment claims. *Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002).

Here, Jones filed a pre-trial motion to suppress pursuant to Rule 41 of the Delaware Superior Court Rules of Criminal Procedure, which was denied by the Superior Court after a hearing. Jones then presented his Fourth Amendment claim in his Rule 61 proceeding; the Superior Court denied the argument as procedurally barred, and the Delaware Supreme Court affirmed that decision. The fact that Delaware provides these mechanisms for presenting Fourth Amendment issues demonstrates that Jones had a "full and fair opportunity to litigate" his Fourth Amendment claim for federal habeas purposes, regardless of whether Jones agrees with the Delaware state courts' resolution of the issue. *See, e.g., Marshall*, 307 F.3d at 82 (holding that "[a]n erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [*Stone*] bar."); *Gilmore v. Marks*, 799 F.2d 51, 56 (3d Cir. 1986). Accordingly,

8

the court will deny claim one as barred by *Stone*.

### B. Claims Two, Three, Four and Five: Procedurally Barred

Although Jones raised the issues asserted in claims two, three, four, and five to the

Delaware Supreme Court on post-conviction appeal, the Delaware Supreme Court denied the

claims as procedurally barred by Delaware Superior Court Rule 61(i)(3), due to Jones' failure to

raise the issues on direct appeal. By applying the procedural bar of Rule 61(i)(3), the Delaware

Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-4 (1984),

that its decision rested on state law grounds. Superior Court Criminal Rule 61 constitutes an

independent and adequate state procedural rule precluding federal habeas review. *See McCleaf v.*

*Carroll*, 416 F. Supp. 2d 283, 296 (D. Del. 2006); *Mayfield v. Carroll*, 2005 WL 2654283 (D.

Del. Oct. 11, 2005). Thus, the court cannot review the merits of the aforementioned claims

absent a showing of cause for the default and prejudice resulting therefrom, or upon a showing

that a miscarriage of justice will occur if the claim is not reviewed.

Jones attempts to establish cause for his default by blaming counsel's failure to raise the

claims on direct appeal. However, in his Rule 61 proceeding, Jones did not present a claim

alleging an ineffective assistance of counsel claim based on appellate counsel's failure to raise

these arguments on direct appeal. Consequently, this ineffective assistance of counsel allegation

is itself procedurally defaulted, *See* Del. Super. Ct. Crim. Rule 61(i)(2), and cannot excuse

Jones' procedural default of claims two, three, four, and five. *See Edwards v. Carpenter*, 529

U.S. 446, 453-54 (2000).

Jones does not assert, and the court cannot discern, any other cause for his procedural

default of the instant four claims. In the absence of cause, the court will not address the issue of

9

prejudice. Additionally, the miscarriage of justice exception to the procedural default doctrine is inapplicable, because Jones has not provided any new reliable evidence of his actual innocence. Accordingly, the court will deny claims two, three, four, and five as procedurally barred.

### C. Claim Six: Ineffective Assistance of Counsel

Claim six asserts the following ten instances of counsel's alleged ineffective assistance: (1) counsel failed to challenge the false information in the affidavit of probable cause; (2) counsel failed to object to improper remarks in the prosecutor's closing argument; (3) counsel failed to challenge the voluntariness of Kim Still's § 3507 statement; (4) counsel failed to object to the perjured testimony of Kim Still, Lynn Raikes, Muhammad Reinford, Yolanda Lum, and Geralyn Holmes; (5) counsel failed to object to Geralyn Holmes' testimony on relevance and unfair prejudice grounds; (6) counsel failed to call as witnesses all the hospital personnel who cared for Muhammad Reinford; (7) counsel failed to call Jones' alibit witness (unnamed); (8) counsel failed to interview Kim Still and Muhammad Reinford; (9) counsel failed to file a pre-trial motion to recuse the judge based on statements the judge made at Jones' co-defendant's trial; and (10) counsel failed to file a speedy trial motion as Jones had asked.

Jones raised arguments one through eight in his Rule 61 motion. Although Jones listed the same eight arguments in his appeal from the denial of that motion, he only briefed arguments six and seven. As a result, arguments one through five and eight through ten are unexhausted because Jones did not fairly present them to the Delaware Supreme Court.[2] At this juncture,

---

[2] The State's Answering Brief in Jones' post-conviction appeal noted that there were ineffective assistance of counsel claims raised in Jones' Rule 61 motion that were not briefed on post-conviction appeal. *Jones v. State*, 2009 WL 275306, at *14 n.10 (Del. Jan. 20, 2009). The State concluded that those claims not raised on post-conviction appeal were waived and abandoned under Delaware law. *Id.* In his Reply Brief, Jones only provided a response

Jones has no method of presenting arguments one through five and eight through ten to the Delaware state courts, because the time for filing a Rule 61 motion has expired and the arguments would be barred as repetitive. *See* Del. Super. Ct. Crim. R. 61(i)(1) & 61(i)(2); *Lawrie v. Snyder*, 9 F. Supp. 2d 428, 453 (D. Del. 1998)(Rule 61(i)(2) bars any ground for relief that was not asserted in a prior proceeding). Hence, the arguments are deemed exhausted but procedurally defaulted, and the court can only reach their merits if Jones demonstrates cause and prejudice, or that a miscarriage of justice will result in the absence of habeas review.

Jones has not alleged cause for his failure to raise these eight ineffective assistance of counsel arguments to the Delaware Supreme Court on post-conviction appeal. The failure to establish cause obviates the need to address prejudice. Moreover, the miscarriage of justice doctrine does not excuse Jones' default because he has not presented new reliable evidence of his actual innocence. Thus, the court will deny as procedurally barred arguments one through five and eight through ten.

As for ineffective assistance of counsel arguments six and seven, the Delaware state courts denied them as meritless. Given this adjudication, the court can only grant habeas relief if the Delaware Supreme Court's denial of these two ineffective assistance of counsel claims were contrary to, or an unreasonable application of, clearly established Federal law, or involved an unreasonable determination of facts in light of the evidence presented at trial.

The clearly established Supreme Court precedent governing ineffective assistance of

---

regarding the two ineffective assistance of counsel claims the State claimed had not been waived and abandoned. *Jones v. State*, 2009 WL 463072, at *3-4 (Del. Feb. 17, 2009). The Delaware Supreme Court affirmed the Superior Court's denial of Jones' Rule 61 motion after considering the "briefs of the parties, and their contentions in oral argument," indicating that it, too, deemed the unbriefed claims as waived and abandoned. *Jones*, 2009 WL 595574, at *1.

counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689. "*Strickland* also calls for great deference to an attorney's tactical decision to forego particular lines of investigation. And those strategic choices that counsel makes after conducting a thorough investigation of the law and facts are virtually unchallengeable." *Blystone v. Horn*, 664 F.3d 397, 420 (3d Cir. 2011).

Notably, a court must apply a doubly deferential standard of review when analyzing an ineffective assistance of counsel claim under § 2254(d)(1). "The pivotal question is whether the state court's application of the *Strickland* was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington*, 131 S.Ct. at 785. When assessing prejudice under *Strickland*, a court must determine if petitioner has

shown "a substantial, not just conceivable" likelihood that the outcome of the case would have

been different if counsel had performed otherwise. *Id.* at 792. In other words, when viewing a

state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d),

federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness

of the state court's decision." *Id.* at 786.

As an initial matter, the Delaware Supreme Court properly identified *Strickland* as the

applicable precedent in affirming the Superior Court's denial the instant two arguments.

Therefore, the Delaware Supreme Court's decision was not contrary to clearly established

Federal law. *See Williams*, 529 U.S. at 406. The court's inquiry is not over, however, because it

must also determine whether the Delaware Supreme Court unreasonably applied *Strickland* in

rejecting arguments six and seven. The court will undertake the reasonableness inquiry with

respect to these two arguments *in seriatim.*

### 1. **Failure to call hospital personnel as witnesses**

In argument six, Jones asserts that his counsel failed to call as witnesses the hospital

personnel who attended Muhammad Reinford while he was a hospital patient. According to

Jones, these witnesses would have testified that Reinford was too medicated to identify him.

In their response to this argument during Jones' Rule 61 proceeding, both defense

attorneys explained that they subpoenaed and introduced into evidence toxicology reports

establishing the types of medication Reinford was taking at the time of the police interview as

well as his level of medication. The attorneys explained that the medical records indicated that

Reinford was alert and lucid during the police interview, and that they did not call any medical

witnesses for fear they would reveal the information contained in the medical records showing

Reinford's alertness and lucidity. The reasons provided by defense counsel demonstrate that their decision to not call medical personnel as witnesses was an informed and reasonable strategic decision, entitled to deference in this proceeding under *Strickland*.

In addition to its acceptance of counsels' strategic explanation, the court finds significance in the fact that the trial court viewed the videotape of the interview as clearly demonstrating Reinford's lucidity and ability to answer police questions in a meaningful way. In turn, the jurors viewed the videotape and had an opportunity to evaluate Reinford's condition for themselves. Thus, when viewed through the doubly deferential lens of habeas review, the Court concludes that the Delaware Supreme Court reasnoably applied *Strickland* in denying argument six. The court also concludes that the Delaware Supreme Court's decision was based on a reasonable determination of the facts. Accordingly, the court will deny this portion of claim six for failing to satisfy

§ 2254(d).

### 2. **Failure to call alibi witness**

Jones' next argument is that counsel provided ineffective assistance by failing to call his alibi witness (Trina Williams) to testify at trial. However, in Jones' Rule 61 proceeding, defense counsel explained that Jones was not arrested and returned to Delaware until many years after his indictment. Unlike the memorialized statements of the State witnesses, Ms. Williams' recollections had not been recorded, and defense counsel concluded that she had no reason to recall the comings and goings of Jones during the relevant time period. Given these circumstances, defense counsel concluded that Ms. Williams would not have been credible witness.

14

Once again, defense counsels' reasonable and informed credibility determination constituted a strategic decision entitled to great deference. Thus, the court concludes that the Delaware state courts reasonably applied *Strickland* in denying this portion of claim six.

Accordingly, the court will deny claim six in its entirety.

### D. Claim Seven: *Batson* Challenge

In claim seven, Jones contends that the State exercised its peremptory challenges during jury selection in a racially-discriminatory manner. The Delaware Supreme Court rejected this argument as meritless on direct appeal. Therefore, Jones will only be entitled to habeas relief if the Delaware Supreme Court's decision was contrary to, or an unreasonable application of, clearly established Federal law.

The clearly established Federal law which governs claims of discriminatory challenges during jury selection is the rule announced in *Batson v. Kentucky*, 476 U.S. 79 (1986). In *Batson*, the Supreme Court established a three-step procedure for evaluating whether a prosecutor has violated the Equal Protection Clause by exercising peremptory challenges for racially discriminatory purposes.

> First, the defendant must make out a prima facie case by "showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." Second, once the defendant has made out a prima facie case, the "burden shifts to the State to explain adequately the racial exclusion" by offering permissible race-neutral justifications for the strikes. Third, "if a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination.

*Johnson v. California*, 545 U.S. 162 (2005).

Here, the Delaware state courts correctly identified the three-part *Batson* framework applicable to Jones' claim. Thus, the Delaware Supreme Court's denial of the claim was not contrary to clearly established Federal law.

15

Nor did the Delaware Supreme Court's decision involve an unreasonable application of *Batson*. Jones alleged a *Batson* violation on direct appeal and, after finding the trial judge's analysis to be incomplete, the Delaware Supreme Court remanded the case to the trial court for factual findings regarding the presence or absence of discriminatory intent. On remand, the Superior Court conducted an evidentiary hearing, analyzed each of the State's peremptory challenges, and found an absence of discriminatory intent. *Jones*, 940 A.2d at 9. When returned from remand, the Delaware Supreme reviewed the Superior Court's denial of Jones' *Batson* claim *de novo*, and held "that a complete *Batson* analysis shows no constitutional violation." *Id.* The Delaware Supreme Court explained that "the prosecutor articulated a credible race-neutral explanation for each of his peremptory challenges." *Id.* at 9. The Delaware Supreme Court also specifically noted the Superior Court's finding that the prosecutor had allowed four minorities to be seated on the jury and had four peremptory challenges remaining when he announced he was content. *Id.*

On habeas review, the highly deferential standard applied for evaluating state-court *Batson* credibility determinations "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, __ U.S. __, 131 S.Ct. 1305, 1307 (2011). Here, Jones attempts to cast doubt on the Delaware Supreme Court's decision by alleging that the prosecutor "threw away key evidence that would have shown one of his reasons for striking a black juror was a lie." (D.I. 2 at 14)[3] This unsupported allegation, however, does not provide a basis for concluding that the Delaware Supreme Court's evaluation was based on an unreasonable determination of facts

---

[3]Page number 14 refers to the number on Jones' original document, not the number assigned by CM/ECF.

or that it involved an unreasonable application of *Batson*, especially when the state supreme court's decision is viewed in context with the prosecutor's race-neutral explanations. Accordingly, the court will deny claim seven.

### E. Claim Eight: Abuse of Discretion With Respect To Evidentiary Decisions

In claim eight, Jones contends that the trial judge abused her discretion by allowing the admission of Kim Stills' prior statements about Page's conversations to her under 11 Del. Code Ann. § 3507; by admitting photographs of the victim; by failing to sequester certain witnesses; and by limiting defense counsels' cross-examination of two witnesses. The Delaware state courts denied these arguments as meritless. Therefore, to the extent any of these claims assert an issue cognizable on federal habeas review, the court must apply the deferential standard of § 2254(d) in evaluating whether any of these claims warrant habeas relief.

### 1. Still's prior statements about Page's statements to her

Darrell Page made a hearsay statement to his girlfriend Kim Still in which he said he was going to have Jones rob (and presumably kill) Reinford, making it look like a drug deal gone bad "so he (Page) would not get into trouble." The jury was allowed to hear Page's hearsay statements in two forms – through the direct testimony of Still and in her videotaped § 3507 statement to police, which was played to the jury and entered into evidence. The court liberally construes Jones' argument to be that the admission of Page's "hearsay within hearsay" statements violated Jones' rights under the Confrontation Clause.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that "testimonial" hearsay

17

is inadmissible unless the declarant is shown to be unavailable and the accused had a prior

opportunity for cross-examination." *Crawford*, 541 U.S. at 68. Although the *Crawford* Court

declined to "articulate a comprehensive definition" of testimonial statements, *Id*. at 68 n.10, the

Supreme Court did later explain in *Davis v. Washington*, 547 U.S. 813, 821-823 (2006) that

statements are "testimonial when the circumstances objectively indicate that there is no . . .

ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past

events potentially relevant to later criminal prosecution." In turn, "[s]tatements are

nontestimonial when made in the course of police interrogation under circumstances objectively

indicating that the primary purpose of the interrogation is to meet an ongoing emergency." *Id*.

The Delaware Supreme Court cited and applied *Crawford* and *Davis* in denying Jones'

claim. Therefore, the Delaware Supreme Court's decision was not contrary to clearly established

Federal law.

Additionally, after reviewing the record, the court concludes that the Delaware Supreme

Court reasonably applied *Crawford* and *Davis* to the facts of Jones' case. Jones contends that the

trial judge violated his confrontation rights in admitting the following statements Still made to

the police during their investigation of Jones and his co-conspirator, Page: (1) Still's comments

regarding what Page told her in the weeks preceding the homicide, including Page's intent to

enlist Jones to commit murder; and (2) statements Page made to Still after the murders, which

implied that Jones was "da man" for committing them.

When presented with the instant claim, the Delaware Supreme Court first held that both

sets of comments were admissible under the Delaware Rules of Evidence. The Delaware

Supreme Court then proceeded to analyze whether the admission of Still's comments violated

18

Jones' rights under the Confrontation Clause. After explaining that "*Crawford* stands for the proposition that "a casual remark to an acquaintance" is a non-testimonial statement, as are statements made in furtherance of a conspiracy, *Jones*, 940 A.2d at12-13 (citing *Crawford*, 541 U.S. at 51, 56), the Delaware Supreme Court noted that Page's statements to Still were "made in furtherance of the conspiracy" and constituted "casual remarks made to his girlfriend (Still)." The Delaware Supreme Court then concluded that these statements were non-testimonial in nature, and explained that the non-testimonial nature of Page's statements to Still was not changed by the fact that "Still revealed these statements in a testimonial setting [police interview]." *Id.* Based on this analysis, the Delaware Supreme Court held that "Page's non-testimonial statements to Still [were] subject only to [Delaware's] hearsay rules because they do not implicate the Confrontation Clause." *Id.* at 13.

The record supports the Delaware Supreme Court's conclusion that Page's statements to Still were non-testimonial. Page's declarations were made in an informal setting to his girlfriend, not during a formal interrogation. When viewed in context, Page's comments were simply "casual remarks to an acquaintance" made with purpose of facilitating a conspiracy, "rather than solemn statements made with the purpose of assisting an investigation." *Crawford*, 541 U.S. at 51. Accordingly, the court concludes that Delaware Supreme Court reasonably applied clearly established Federal law in holding that the admission of Page's non-testimonial statements to Still did not violate the Confrontation Clause.

### 2. Admission of Still's videotaped statement

Jones also argues that the § 3507 videotape of Still's statement should not have been admitted into evidence as a trial exhibit. Although Jones raised this issue on direct appeal, he did

not raise the issue at trial. Consequently, the Delaware Supreme Court applied Delaware

Supreme Court Rule 8 and only considered the argument under a plain error standard. *Jones*, 940

A.2d at 13-14. By applying the procedural bar of Rule 8, the Delaware Supreme Court

articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-4 (1984), that its

decision rested on state law grounds. In turn, Delaware Supreme Court Rule 8 is an independent

and adequate state procedural rule precluding federal habeas review absent a showing of cause

for the default, and prejudice resulting therefrom, or that a miscarriage of justice will occur if the

claim is not reviewed. *See Campbell v. Burris*, 515 F.3d 172, 182 (3d Cir. 2008). Jones has

failed to allege either cause or prejudice. He has also failed to provide new reliable evidence of

his actual innocence. Therefore, the court will deny this argument as procedurally barred.

### 3. <u>Admission of photo depicting the victim's charred body</u>

Jones contends that the trial judge abused her discretion in admitting the photographs

depicting the remains of Reinhard's car and charred body. This alleged state evidentiary error

fails to assert an issue cognizable on federal habeas review. *See generally Estelle*, 502 U.S. 62.

Accordingly, the court will deny this claim.

### 4. <u>Failure to sequester two Prosecution witnesses</u>

Jones complains that the trial court failed to sequester two prosecution witnesses while

the police officer testified about the content and voluntariness of their § 3507 statements. As

presented, this claim asserts an error of state law. *See generally Estelle*, 502 U.S. 62. Therefore,

the court will deny the argument for failing to assert an issue cognizable on federal habeas

review.

### 5. **Limited cross-examination of two prosecution witnesses**

In claim seven's final argument, Jones contends that the trial court judge abused her discretion in limiting defense counsels' cross-examination of two prosecution witnesses: Officer Di Nardo and Yolanda Lum. Officer Di Nardo was among those officers assigned to the search the house where Maneeka Plant Davis was murdered and where Muhammad Reinford was shot in the face. Reinford was one of the residents of the house; he survived the shooting and was a witness at Jones' trial. During direct examination, Office DiNardo testified that several hundred vials of marijuana were found in the basement of the house. On cross-examination, defense counsel asked Officer DiNardo whether Reinford had been charged with drug offenses as a result of this discovery. The State objected on relevance grounds, and the court sustained the objection. Jones' counsel drafted an unopposed motion *in limine* seeking an opportunity to explore Rienford's bias. During her consideration of the motion, the trial judge stated, "I wanted to clarify that my [DiNardo] ruling had nothing to do with relevance when it dealt with the police officer, or the detective. It was the fact that there was no foundation for whether he could or could not make charges in the decision." *Jones*, 940 A.2d at 15. The Delaware Supreme Court found no abuse of discretion in this decision.

Jones' second complaint is that the trial judge erred in restricting the cross-examination of Yolanda Lum, a drug dealer who worked for Page. At the time of her testimony, Lum had charges pending against her. When defense counsel attempted to cross-examine Lum about those charges, the trial judge found that the charges were inadmissible under D.R.E. 609(a) because they were not convictions. After Lum was recalled as a witness and asked about the pending charges during direct examination, Jones' counsel declined to cross-examine Lum at all. In light

of defense counsel's refusal to cross-examine Lum when given the opportunity, the Delaware Supreme Court held that Jones' argument lacked merit.

Although these two "errors" are presented as examples of the trial judge's "abuse of discretion," Jones' is simply complaining about state evidentiary errors. These "errors" fail to rise to the level of a constitutional claim cognizable on federal habeas review. Therefore, the court will deny Jones' instant argument as failing to allege a proper basis for federal habeas relief.

### F. Claim Nine: Judicial Misconduct

In his final claim for relief, Jones contends that he was denied a fair trial when the trial court judge denied Jones' motion for recusal. Jones raised this claim on direct appeal, and the Delaware Supreme Court denied it as meritless. Therefore, the court must review the Delaware Supreme Court's decision under § 2254(d) to determine if it warrants relief.

Delaware engages in a two-part analysis for determining whether disqualification of a judge is appropriate. *See Gattis v. State*, 955 A.2d 1276, 1281 (Del. 2008). The first prong is subjective, and involves determining if the judge is satisfied he can proceed to hear the case free of bias or prejudice. *Id.* The second prong is objective, and involves determining if the circumstances require recusal because there is an appearance of bias sufficient to cause doubt as to the judge's impartiality. *Id.* In order for a judge to be disqualified under the objective prong, "the alleged bias or prejudice of the judge must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *Id.* at 1282. Federal jurisprudence is consistent with Delaware law in requiring more than exposure to adverse inadmissible information during the course of current or prior judicial

22

proceedings to support a motion to disqualify a judge. *See, e.g., Liteky v. United States*, 510 U.S. 540, 555 (1994)("opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible").

In this case, the Delaware Supreme Court identified the proper Delaware precedent for analyzing Jones' recusal argument which, in turn, complies with the proper Federal standard applicable to such claims. Thus, the Delaware Supreme Court's decision was not contrary to clearly established Federal law.

Additionally, the court concludes that the Delaware Supreme Court reasonably applied Supreme Court precedent in denying the instant recusal argument. In this proceeding, Jones alleges that

> the trial judge was caught in a bar/restaurant talking about making sure the petitioner gets the death penalty and her dislike for the petitioner. This was overheard by two civilians who reported her to petitioner's lawyer. When the record is reviewed as a whole by this federal court it will show the judge favored the prosecution at every instant so she could make sure the petitioner was found guilty so she could see to it petitioner go the death penalty.

(D.I. 1 at Ground Nine) The court views Jones' argument to be that the trial judge erred in denying his recusal motion because the judge suffered from actual bias and the appearance of bias.

In this case, the Delaware Supreme Court found the trial judge's determination that she was not biased against Jones to be credible. *Jones*, 940 A.2d at 19. Given Jones' failure to rebut this finding with clear and convincing evidence, the court accepts the Delaware Supreme Court's finding that there was no actual bias. Considering that the Due Process Clause does not require a

23

judge to recuse based on the appearance of impropriety alone, *See Johnson v. Carroll*, 369 F.3d 253 (3d Cir. 2004), the court could deny claim nine on this basis alone.

Nevertheless, the court also concludes that Jones has failed to demonstrate an appearance of bias sufficient to cause doubt as to the trial judge's impartiality. Although the trial judge was clearly unhappy with defense counsel, there is not any evidence that the judge was biased against Jones. The witness stated that she heard the judge use profanity when referring to defense counsel and heard the judge say that "she would get the last word and that man on trial would get the death penalty." *Jones*, 940 A.2d at 18-19. As the judge explained, defense counsel had reacted poorly to a denial of a request for a day's recess during the penalty phase, accusing the judge of favoring the prosecution. *Id*. at 18. The judge admitted she was angry about defense counsel's behavior, but her problem with defense counsel had nothing to do with Jones or his trial, other than scheduling.

As set forth in *Liteky*, even "judicial remarks during the course of a trial that are critical or disapproving of or even hostile to counsel [] ordinarily do not support a bias or partiality challenge," and will do so only where "they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky*, 510 U.S. at 555. When viewed in context with the trial judge's explanation and the record, the trial judge's statements did not "display a deep-seated favoritism or antagonism that would [have made] fair judgment impossible." *Id*. at 541. Although the remarks made by the judge and overheard by a restaurant patron were admittedly inappropriate, they did not demonstrate any bias against Jones. Thus, the court concludes that the Delaware Supreme Court's finding that there was no basis for any claim of bias against Jones constituted a reasonable determination of the facts based on the evidence,

24

and also involved a reasonable application of Supreme Court precedent. Accordingly, the court will deny claim eight for failing to satisfy § 2254(d).

## V.  CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The court has concluded that Jones' petition fails to warrant federal habeas relief.  The court is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the court will not issue a certificate of appealability.

## VI.  CONCLUSION

For the reasons stated, Jones' petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability.  An appropriate order shall issue.